# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2428-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

C.A.G.,[1]

    Defendant-Appellant.

_____

Argued April 15, 2026 – Decided July 20, 2026

Before Judges Currier, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 21-12-3166.

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs).

Kevin J. Hein, Assistant Prosecutor, argued the cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Kevin J. Hein, of counsel and on the brief).

---

[1] We use initials to protect the victim's privacy. R. 1:38-3(e)(12).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

After a jury trial, defendant challenges his convictions and sentence on multiple grounds, alleging constitutional violations during jury selection and errors in jury instructions, evidentiary rulings, and sentencing. After a review of the contentions in light of the record and applicable principles of law, we affirm the convictions but conclude the imposition of aggravating factor two, N.J.S.A. 2C:44-1(a)(2), was error. Therefore, we vacate the sentence and remand for a new sentencing hearing.

## I.

We derive the following salient facts from the trial testimony.

Defendant married I.G. in 2015 and they had one child together. I.G.'s child from a previous relationship lived with them as well.

According to I.G., in September and October 2021, the marriage was "deteriorat[ing]."[2] The couple often fought, accusing each other of infidelity. In the days prior to the incident that gave rise to the charges against defendant, the couple were arguing about I.G. "liking" another man's picture on Instagram.

_____

[2] I.G. filed for divorce on June 8, 2022.

A-2428-23

According to I.G., she explained to defendant that the man was "a barber that a mutual friend . . . had recommended for [their] kids." Defendant was upset and continued to accuse I.G. of infidelity.

On September 27, 2021, I.G. returned home after attending her niece's wedding. Defendant again questioned her about the man from the Instagram post. I.G. testified that she reiterated her explanation regarding who the man was and went to take a shower. While she was in the shower, defendant, who was fully clothed, entered the shower and started to yell in I.G.'s face, telling her he was going to find out the truth and that she would "regret it."

On October 1, 2021, I.G. went to bed a little after 12:00 a.m. Defendant was not home. According to I.G., the couple were not sleeping in the same bedroom at that point.

I.G. testified that at approximately 4:00 a.m., she woke up after hearing "stumbles" and assumed it was defendant coming home after a night of drinking. She said: "After a few minutes, I heard footsteps . . . coming into the bedroom. . . . [Defendant] walked to the foot of the bed, . . . pulled the covers off of me, . . . grabbed me by my ankles and . . . pulled me towards him," all without saying a word. Defendant then took off I.G.'s underwear and "started giving [her] oral sex." I.G. "didn't say nothing at the time." Defendant then

positioned I.G. in a way that indicated to her that he also wanted oral sex. I.G. proceeded to perform fellatio. After some time, defendant penetrated I.G. and began to engage in vaginal intercourse with her. I.G. testified that while defendant was having sex with her, he told her "to tell him that [she] was sorry" and that "[she] love[d] [him]." I.G. said defendant "was putting some of his body weight on [her], not all of it, but he was leaning forward where some of his body weight was on [her]."

I.G. testified that during the sexual intercourse, she "didn't try to get away from [defendant]." However, she "told him to stop" approximately "four or five times." Defendant did not do so. I.G. also described that during the vaginal intercourse, defendant "had his [one] hand around [I.G.'s] neck and he was choking [her]," and she felt she could not breathe. I.G. stated that "[a]fter a few times of telling [defendant] to stop, that [she] couldn't breathe, he took his hand off . . . [her] neck, he got up. And before he walked out [of] the room, he told [her] that he would let [her] breathe for now." The entire incident lasted approximately one hour.

The following day, I.G. went to her mother's house and told her what happened. Thereafter, I.G. reported the events to the police and subsequently obtained a restraining order.

4

Defendant was charged in an indictment with: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3) (count one); third-degree aggravated assault on a domestic violence victim, N.J.S.A. 2C:12-1(b)(12) (count two); second-degree aggravated assault by strangulation, N.J.S.A. 2C:12-1(b)(13) (count three); fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (count four); third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (count five); and third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count six).

Trial began in May 2023. On June 1, 2023, the jury found defendant guilty of first-degree aggravated sexual assault, second-degree aggravated assault by strangulation, fourth-degree criminal sexual contact, and third-degree criminal restraint. Defendant was acquitted of the remaining counts. A subsequent motion for new trial was denied.

On January 12, 2024, defendant was sentenced to an aggregate prison term of seventeen years, with an eighty-five percent parole ineligibility period pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

II.

In his counselled brief, defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT REVERSIBLY ERRED IN FAILING TO INSTRUCT THE JURY ON ALL OF THE ESSENTIAL ELEMENTS OF AGGRAVATED ASSAULT BY STRANGULATION AND FAILING TO PROVIDE INSTRUCTIONS CRUCIAL TO EVALUATING THE "BODILY INJURY" ELEMENT OF THAT OFFENSE.

POINT II

THE TRIAL COURT REVERSIBLY ERRED BY INSTRUCTING THE JURY THAT [I.G.'S] ACTIONS DURING THE SEXUAL INTERCOURSE WERE IMMATERIAL TO ITS CONSIDERATION OF WHETHER THERE WAS CONSENT TO THE SEXUAL CONDUCT.

> A. State in Interest of M.T.S., 129 N.J. 422 (1992), Is Internally Inconsistent About the Role of the Alleged Victim's Conduct in Sexual Assault Trials.

> B. The Aggravated Sexual Assault and Criminal Sexual Contact Model Charges Contain Language Improperly Telling the Jury Not to Consider the Alleged Victim's Conduct in Evaluating Consent and Shifting the Burden of Proof to the Defense.

POINT III

THE FACTS ALLEGED FAILED AS A MATTER OF LAW TO CONSTITUTE THE CRIME OF COMMITTING A SEXUAL ASSAULT DURING THE COMMISSION OF A FELONY UNDER N.J.S.A. 2C:14-2(a)(3).

6

POINT IV

[DEFENDANT'S] CONVICTION FOR CRIMINAL RESTRAINT MUST BE REVERSED PURSUANT TO STATE V. LYLES, 291 N.J. SUPER. 517 (APP. DIV. 1996), BECAUSE IT WAS PREDICATED ONLY ON THE FACT OF [DEFENDANT AND I.G.] BEING ENGAGED IN SEXUAL ACTIVITY.

POINT V

[DEFENDANT]'S SENTENCES MUST OTHERWISE BE REVERSED AND THE MATTER REMANDED FOR A RESENTENCING BECAUSE THE TRIAL COURT ERRONEOUSLY APPLIED AGGRAVATING FACTORS TWO AND FIFTEEN AND FAILED TO MERGE THE AGGRAVATED ASSAULT CONVICTION WITH THE CONVICTION FOR AGGRAVATED SEXUAL ASSAULT.

In his self-represented brief, defendant asserts:

POINT [V]I

THE COURT ERRED BY ALLOWING BRADY VIOLATIONS FOR THE ADMISSION OF THREE (3) PHOTOGRAPHS BY THE STATE THAT SHOWED THE INTERIOR PORTIONS OF [I.G.'S] VAGINAL CANAL WITHOUT THE KNOWLEDGE AND DISCLOSURE TO THE DEFENSE PRIOR TO THEIR ADMISSION AT TRIAL, IN VIOLATION OF N.J.R.E. 401, N.J.R.E. 402, N.J.R.E. 403, PURSUANT TO [BRADY V. MARYLAND, 373 US. 83 (1963)].

POINT [V]II

THE STATE'S FAILURE TO INFORM THE DEFENSE OF ERRORS WITHIN THE SEXUAL ASSAULT NURSE EXAMINER (SANE) REPORT THAT THE STATE WAS AWARE OF TWO (2) WEEKS PRIOR TO THE TRIAL CONSTITUTES

7

BRADY VIOLATIONS AS PURSUANT TO [BRADY V. MARYLAND, 373 US. 83 (1963)].

POINT [V]III
THE COURT ERRED BY ALLOWING THE ADMISSION OF A RECORDED PHONE CALL BETWEEN THE [DEFENDANT] AND [I.G.] THAT TOOK PLACE ON SEPTEMBER 27, 2021[,] WHILE [DEFENDANT] WAS WORKING IN PHILADELPHIA PENNSYLVANIA. [DEFENDANT] CONTENDS THIS ALTERED RECORDING VIOLATES [18 U.S.C. § 2516] THE FEDERAL WIRETAP LAW, NEW JERSEY WIRETAP LAW, AND PENNSYLVANIA WIRETAP LAW (18 Pa C.S.A. § 5703) AS [DEFENDANT] WAS UNDER PENNSYLVANIA JURISDICTION WHEN THIS RECORDING TOOK PLACE WITHOUT HIS CONSENT OR KNOWLEDGE.

POINT I[X]
THE VOIR DIRE QUESTIONING BY THE TRIAL COURT OF PROSPECTIVE JURORS DURING JURY SELECTION DEPRIVED DEFENDANT OF A FAIR TRIAL AS GUARANTEED IN THE SIXTH AMENDMENT OF THE FEDERAL CONSTITUTION AND N.J. CONST. ART. I, PARA 10. [DEFENDANT'S] COUNSEL REQUESTED THAT THE TRIAL COURT INQUIRE DURING JURY SELECTION ABOUT PROSPECTIVE JURORS' PERSPECTIVE ON WHETHER "IT IS POSSIBLE THAT A WIFE CAN MAKE UP AN ALLEGATION TO STRENGTHEN HER CASE AGAINST HER HUSBAND IN A DIVORCE PROCEEDING."

POINT [X]
[DEFENDANT] WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY AND DENIED HIS

8

FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL DUE TO A LACK OF POTENTIAL BLACK AND OTHER MINORITY JURORS, RESULTING IN AN ALL-WHITE JURY CONVICTING DEFENDANT. BLACKS AND OTHER MINORITY JURORS WERE IMPROPERLY EXCLUDED FROM THE JURY.

POINT [X]I
[DEFENDANT] WAS DENIED THE RIGHT TO A FAIR TRIAL AS THE TRIAL COURT JUDGE CONDUCTED SEVERAL JUDICIAL MISCONDUCT ERRORS THAT RESULTED IN JUDICIAL IMPROPRIETY AND FORMED AN UNBIASED VIEW FROM THE JURY. THE TRIAL COURT JUDGE SHOULD HAVE RECUSED HIMSELF FROM THE TRIAL ON REQUEST[] FROM THE DEFENSE AND FAILURE TO DO SO RESULTED IN [DEFENDANT'S] CONVICTION.

III.

A. Jury Instructions

A proper jury charge is essential to a fair trial. Reynolds v. Gonzalez, 172 N.J. 266, 288 (2002). We "will not disturb a jury's verdict based on a trial court's instructional error 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'" Wade v. Kessler Inst., 172 N.J. 327, 341 (2002) (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)).

9

When a party fails to object at trial, the charge is reviewed for plain error. State v. Noble, 398 N.J. Super. 574, 593 (App. Div. 2008); R. 2:10-2. "[P]lain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Montalvo, 229 N.J. 300, 321 (2017) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

Defendant contends the court failed to properly instruct the jury on all elements of the aggravated assault by strangulation charge and on the law of attempt necessary for evaluating the elements.

In a discussion of the jury charge on the record, the court and parties noted there was no model jury charge for count three—aggravated assault by strangulation, N.J.S.A. 2C:12-1(b)(13).[3]  Counsel agreed to craft a charge for the court.  There was no further discussion on the record regarding this charge. On the next trial date, the court advised it sent a draft jury charge and verdict sheet to counsel, who made revisions, which the court incorporated into a final

---

[3]  A model jury charge was subsequently adopted in November 2023.

draft and recirculated to counsel. All counsel agreed to the jury charges on the record.

N.J.S.A. 2C:12-1(b)(13) states a person is guilty of aggravated assault if the person:

> Knowingly or, under circumstances manifesting extreme indifference to the value of human life, recklessly obstructs the breathing or blood circulation of a person who, with respect to the actor, meets the definition of a victim of domestic violence, as defined in [N.J.S.A. 2C:25-19(d)], by applying pressure on the throat or neck or blocking the nose or mouth of such person, thereby causing or attempting to cause bodily injury.

The court charged the jury as follows:

> To find . . . defendant guilty of aggravated assault the State must prove beyond a reasonable doubt each of the following elements. First, . . . defendant obstructs the breathing or blood circulation of [I.G.] by applying pressure on the throat or neck, or by blocking the nose or mouth of such person, thereby causing or attempting to cause bodily injury to [I.G.].
>
> Second, that . . . defendant acted purposely or knowingly, or under circumstances manifesting extreme indifference to the value of human life recklessly, and that [I.G.] meets the definition of a victim of domestic violence.
>
> This [c]ourt has previously stated the definition of each of the following terms and/or phrases, purposely, knowingly, under circumstances manifesting extreme indifference to the value of human

11

life, recklessly, and domestic violence victim. Those definitions apply to this section, as well.

Bodily injury is defined as pain—as physical pain, illness, or any impairment of the physical condition of another.

<u>The first element the State must prove beyond a reasonable doubt is . . . defendant obstructs the breathing or blood circulation of [I.G.] by applying pressure on the throat or neck, or blocking the nose or mouth of such person, thereby causing or attempting to cause bodily injury to [I.G.]</u>

<u>The second element the State must prove beyond a reasonable doubt is defendant acted purposely or knowingly, or under circumstances manifesting extreme indifference to the value of human life recklessly.</u>

<u>The third element that the State must prove beyond a reasonable doubt is that [I.G.] meets the definition of a victim of domestic violence. If you find the State has proven every element beyond a reasonable doubt, then you must find . . . defendant guilty of aggravated assault.</u>

If you find the State has failed to prove any of these elements beyond a reasonable doubt, then you must find . . . defendant not guilty of aggravated assault.

[(Emphasis added).]

Not only did defendant fail to object to the charge at trial but defense counsel collaboratively drafted and revised the instruction now alleged to be erroneous. Under the invited error doctrine, "[t]rial errors which were induced,

encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal." State v. Corsaro, 107 N.J. 339, 345 (1987).

Nevertheless, given the crucial role a jury instruction plays, we will address defendant's arguments. Specifically, defendant asserts the bodily injury element of the crime was "functionally omitted from the jury instructions."

Our review of the charge reveals the court properly apprised the jury of all material elements the State was required to prove under the statute. The court explicitly instructed the jury on bodily injury. We discern no plain error.

Defendant's second challenge to the jury instructions is that the court erred in charging the jury with the "consent" language in the model jury charge for aggravated sexual assault because it permitted the jury to disregard evidence that I.G. reciprocated oral sex, made no physical attempt to stop defendant during the sexual acts, and did not specifically ask defendant to stop choking her.

In State in Interest of M.T.S., 129 N.J. 422, 425 (1992), our Supreme Court considered "what evidence is probative to establish the commission of a sexual assault." The Court noted that under traditional law, "[t]o demonstrate that the victim had not consented to the intercourse, and also that sufficient force had been used to accomplish the rape, the [S]tate had to prove that the victim

had resisted." Id. at 432-33. After recounting the longstanding history of the "misguided belief that rape was not real unless the victim fought back," id. at 437, the Court held that in sexual assault cases

> the factfinder must decide whether the defendant's act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the alleged victim had freely given affirmative permission to the specific act of sexual penetration. Such permission can be indicated either through words or through actions that, when viewed in the light of all the surrounding circumstances, would demonstrate to a reasonable person affirmative and freely-given authorization for the specific act of sexual penetration.
>
> [Id. at 447-48.]

Therefore, the Court asserted "the State must prove beyond a reasonable doubt that there was sexual penetration and that it was accomplished without the affirmative and freely-given permission of the alleged victim." Id. at 448. However, "neither the alleged victim's subjective state of mind nor the reasonableness of the alleged victim's actions can be deemed relevant to the offense." Ibid. The Court declared "the law places no burden on the alleged victim to have expressed non-consent or to have denied permission, and no inquiry is made into what he or she thought or desired or why he or she did not resist or protest." Ibid.

14

The Court also addressed sexual penetration not involving "unusual" physical force, stating that "[b]ecause 'physical force' as an element of sexual assault . . . requires the absence of affirmative and freely-given permission, the 'consent' necessary to negate such 'physical force' under a defense based on consent would require the presence of such affirmative and freely-given permission." Id. at 449.

Here, the trial court charged the jury in accordance with the model jury charge, instructing it to

> decide whether defendant's alleged act of penetration was undertaken in circumstances that led . . . defendant to reasonably believe that the alleged victim had freely given . . . affirmative permission to the specific a[c]t of sexual penetration. Simply put, affirmatively giving permission means the alleged victim did or said something which would lead a reasonable person to believe she was agreeing to engage in the act of sexual penetration. And freely given permission means the alleged victim agreed of her own free will to engage in the act of sexual penetration.
>
> Freely and affirmatively given permission can be indicated either through words or through actions that when viewed in the light of all of the surrounding circumstances would demonstrate to a reasonable person that . . . affirmative and freely given permission for the specific act of sexual penetration had been given.

A-2428-23

Persons need not, of course, expressly announce their consent to engage in an act of sexual intercourse for there to be affirmative permission.

Permission to engage in an act of sexual penetration can be and indeed often is indicated through physical actions rather than words. Permission is demonstrated when the evidence, in whatever form, is sufficient to demonstrate that a reasonable person would have believed that the alleged victim had affirmatively and freely given authorization to the act.

Proof that the act of sexual penetration occurred without the alleged victim's permission can be based on evidence of conduct or words in light of surrounding circumstances and must demonstrate beyond a reasonable doubt that a reasonable person would not have believed that there was affirmative and freely given permission.

If there is evidence to suggest that . . . defendant reasonably believed that such permission had been given, the State must demonstrate either that . . . defendant did not actually believe that the permission had been freely given, or that such a belief was unreasonable under all the circumstances.

In determining the reasonableness of defendant's belief that the alleged victim had freely . . . given affirmative permission [the jury] must keep in mind that the law places no burden on the alleged victim to have expressed non-consent or to have denied permission.

You should not speculate as to what that alleged victim thought or desired, or why she did not resist or protest.

A-2428-23

The State is not required to prove that the alleged victim resisted or resisted to the utmost, or reasonably resisted the sexual assault.

We are satisfied the trial court appropriately instructed the jury in accordance with the law. First, the trial court used the model jury charge. As we have stated, "a jury charge is presumed to be proper when it tracks the model jury charge because the process to adopt model jury charges is 'comprehensive and thorough.'" State v. Cotto, 471 N.J. Super. 489, 543 (App. Div. 2022) (quoting State v. R.B., 183 N.J. 308, 325 (2005)). "It is difficult to find that a charge that follows the Model Charge so closely constitutes plain error." Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 466 (2000).

Second, the charge conformed with the Court's directives expressed in M.T.S. The trial court instructed the jury to consider "permission . . . either through words or through actions that when viewed in the light of all of the surrounding circumstances would demonstrate to a reasonable person that . . . affirmative[] and freely giv[en] permission for the specific act of sexual penetration had been given." (Emphasis added). As articulated in M.T.S., the instruction informs the jury to consider the totality of the victim's actions when assessing the reasonableness of defendant's belief that they had consent to

sexually penetrate the victim, while appropriately limiting the inquiry into the victim's subjective mental state.

Third, defendant's assertion that "the language of [the jury charge] improperly suggests that it is . . . defendant's burden to affirmatively demonstrate consent by some quantum of evidence" is meritless. The court informed the jury the State must prove every element beyond a reasonable doubt. The court further stated: "The State must further prove beyond a reasonable doubt that . . . defendant committed the act of sexual penetration without the alleged victim's freely and affirmatively giving permission to the specific act of penetration alleged to have occurred." The court also noted:

> If there is evidence to suggest that . . . defendant reasonably believed that such permission had been given, the State must demonstrate . . . that . . . defendant did not actually believe that the permission had been freely given, or that such a belief was unreasonable under all of the circumstances.

### B. Enhancement liability

Defendant also challenges the aggravated sexual assault conviction under his argument in Point III of his counseled brief, in which he contends he was wrongly "convicted of aggravated sexual assault based on the theory of liability that he committed the sexual assault during the commission of a qualifying felony." Defendant asserts that to be found guilty under N.J.S.A. 2C:14-2(a)(3),

18

a jury must find "some predicate act of the felony . . . occur[ed] before the sexual conduct." Defendant cites Cannel, New Jersey Criminal Code Annotated, cmt. 2 on N.J.S.A. 2C:14-2 (2025) and State v. Drury, 382 N.J. Super. 469 (App. Div. 2006) arguing a "'substantial step toward the commission of the underlying crime must precede the act of sexual penetration' in order for a defendant to be convicted of committing a sexual assault during the course of a felony." He states, "even assuming the choking was an aggravated assault, the facts as alleged would be a felony committed during the course of a sexual assault, not a sexual assault committed in the course of a felony."

The trial court considered and rejected this argument in the context of defendant's motion for new trial. After carefully analyzing the statutory provisions and applicable case law, the court stated:

> Applying the same legal analysis as previously discussed and viewed in the context of the specific facts in this case, I do not find [that] the challenge[d] language of the charge was misleading or ambiguous. The evidence at trial was defendant penetrated the victim and then placed his hands around her neck restricting her breathing in an attempt to cause bodily injury.
>
> While the initial penetration was not preceded by a statutory predicate act of aggravated assault, the continued penetration coupled with the predicate act of aggravated assault, in the words of [State v. Cole, 120 N.J. 321, 332 (1990)] "[t]hreatened the victim with the

19

greatest amount of harm during the act of sexual penetration."  Thus, enhancement in the degree of the crime is appropriate and consistent with the legislative intent.

In interpreting statutes, it is well understood that "[i]t is not the function of [the] [c]ourt to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'"  DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).  A court "must first examine the statute's plain language.  If the language is clear, the court interprets the statute consistent with its plain meaning."  Presbyterian Home at Pennington, Inc. v. Borough of Pennington, 409 N.J. Super. 166, 180 (App. Div. 2009).

N.J.S.A. 2C:14-2(a)(3) states that:  "An actor is guilty of aggravated sexual assault if . . . [t]he act is committed during the commission, or attempted commission, . . . of . . . aggravated assault on the victim . . . ."

The statute does not differentiate between "a felony committed during the course of a sexual assault" and "a sexual assault committed in the course of a felony."  In both scenarios, there is a clear overlap between the underlying felony and the sexual assault, which warrants application of N.J.S.A. 2C:14-2(a)(3).  The plain language of the statute requires only that the sexual assault

20

occur during the commission of an aggravated assault. According to I.G.'s testimony, defendant continued to choke her after she repeatedly told him to stop, and this occurred during the course of nonconsensual sexual intercourse. The facts presented here fall squarely within the parameters of the statute.

Drury is not applicable. There, the defendant carjacked the vehicle which the victim was driving and ordered the victim to drive him to different locations. Drury, 382 N.J. Super. at 475. At one point, the defendant demanded the victim accompany him into a house, where he locked her in a room and choked her to unconsciousness. When she awoke, he raped her. Id. at 476. The defendant then returned to the car with the victim, and they drove around for another forty-five minutes after which the defendant took the car keys and fled. Ibid. The jury found the defendant guilty of first-degree aggravated sexual assault and first-degree carjacking in addition to other offenses. Id. at 474.

The defendant contended on appeal the evidence did not support the required finding that sexual penetration of the victim was committed during the commission or attempted commission of carjacking. We agreed, stating the evidence "[did] not support the finding that defendant was attempting or in the commission or in flight from commission of the carjacking during the time he was inside the house with the victim of the sexual assault." Id. at 482. We

21

modified the conviction to second-degree sexual assault and ordered a new sentencing hearing. Id. at 483.

In Drury, the sexual assault and the qualifying felony were separate and distinct in time. Here, the sexual assault and aggravated assault (choking) were contemporaneous and overlapping. The jury's conviction of aggravated sexual assault is supported by the trial evidence.

## C. Criminal Restraint

In Point IV, defendant contends his conviction of third-degree criminal restraint under N.J.S.A. 2C:13-2(a) should be reversed because "[v]irtually all typical sexual intercourse involves embracing the other person and/or putting weight on the other person for periods of time." We are not convinced.

N.J.S.A. 2C:13-2(a) defines criminal restraint as a crime of the third degree if one knowingly "[r]estrains another unlawfully in circumstances exposing the other to risk of serious bodily injury." Here, the jury heard evidence that defendant continued to lay on I.G. for over an hour despite her request that he get off her. During this time, he had his hand around her neck and choked her to the point of not breathing. There was ample evidence to conclude this conduct constituted a separate danger that substantially increased

22

the risk of harm to the victim. We also note the court merged this conviction with the conviction for first-degree aggravated sexual assault.

D. The Sentence

We turn to defendant's arguments regarding his sentence. Defendant asserts the court improperly applied aggravating factors two and fifteen and erred in failing to merge the aggravated assault conviction with the aggravated sexual assault conviction.

We review a sentencing court's imposition of sentence for an abuse of discretion. State v. Hudson, 209 N.J. 513, 529 (2012). We will "affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989).

The court found aggravating factors two, three, six, nine and fifteen, N.J.S.A. 2C:44-1(a)(2) to (3), (6), (9), (15). The court also applied mitigating factors seven and twelve, N.J.S.A. 2C:44-1(b)(7), (12).

In analyzing the applicability of factor two, the gravity and seriousness of the offense, the court found that defendant

> who in height and weight was significantly physically larger than his wife, forcibly engaged in intercourse

after his wife told him repeatedly no. This offense occurred in the marital home with young children asleep. . . . This was an aggressive sexual assault with a clear intent to punish and degrade the victim, who is not capable of defending herself from this [defendant]. This defendant was physically more powerful than the victim. . . . [T]his factor is applicable and is weighed extremely heavily, [it] is applied to all four counts.

Our Supreme Court has instructed that, in determining whether this factor applies, the trial court should "consider[] whether 'the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.'" State v. Lawless, 214 N.J. 594, 599-600 (2013) (quoting N.J.S.A. 2C:44-1(a)(2)); see also O'Donnell, 117 N.J. at 219 ("When . . . a victim is so constrained as to make physical resistance virtually impossible, he or she has been rendered vulnerable within the meaning of section 1a(2).").

The evidence does not reflect I.G. possessed particular vulnerabilities which defendant exploited as contemplated by the Lawless Court. In addition, the fact that young children were asleep in the house during the commission of the offenses was not relevant to the application of factor two because the children were not victims of the crime. See State v. Kromphold, 162 N.J. 345,

24

358 (2000) (finding N.J.S.A. 2C:44-1(a)(2) compels "a pragmatic assessment of the totality of harm inflicted by the offender on the victim.").

In addition, the court's reference to defendant choking I.G. as influencing its sentencing decision constitutes impermissible double counting. The aggravated assault of strangulation served as the predicate felony elevating defendant's crime to a first-degree offense. N.J.S.A. 2C:14-2(a)(3). Per Lawless, "[e]lements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." 214 N.J. at 608. The trial court erred in applying factor two.

As to aggravating factor fifteen, whether the offense involved an act of domestic violence and defendant committed at least one act of domestic violence on more than one prior occasion, defendant asserts the court improperly relied on his prior conviction for assault in Pennsylvania.

In finding that factor fifteen applied, the court stated that "defendant committed an act of domestic violence on more than one occasion. . . . [D]efendant has twice assaulted his wife, once in Pennsylvania and the within matter here in New Jersey. This [c]ourt gives, therefore, this factor great weight and it applies to all four counts."

This court has stated that "aggravating factor fifteen only applies if the court finds based on sufficient credible evidence that a defendant had previously committed an act of domestic violence." State v. R.A.M., 482 N.J. Super. 439, 458-59 (App. Div. 2025) ("The Legislature clearly intended for courts to apply aggravating factor fifteen to defendants that have an established history of committing domestic violence and are convicted of committing a new offense against a victim of domestic violence.").

Both defendant and I.G. reported to the investigating police following this 2021 incident that defendant was arrested for choking I.G. to the point of unconsciousness in Philadelphia in 2018 and spent over two months in jail. The sentencing court also noted that defendant's prior assault conviction in Pennsylvania appeared in the Presentence Report. Defense counsel agreed the report listed several misdemeanors.

We are satisfied the application of aggravation factor fifteen was supported by competent and credible evidence in the record. State v. Fuentes, 217 N.J. 57, 70 (2014).

Lastly as to the sentence, defendant contends the trial court erred in not merging the aggravated assault conviction with the aggravated sexual assault conviction. In determining not to merge the convictions, the court stated: "[I]t's

clear that the legislature in enacting [N.J.S.A. 2C:14-2(a)(3)] intended the crime of aggravated sexual assault to be separate and distinct from the underlying offenses."  The court determined that the enhancement feature of the underlying offense reflected "a legislative recognition of an additional threat of physical or psychological harm to the victim over and above the act of sexual violence."

The merger of convictions "implicates a defendant's substantive constitutional rights." Cole, 120 N.J. at 326.  "At its core, merger's substantial purpose 'is to avoid double punishment for a single wrongdoing.'" State v. Romero, 191 N.J. 59, 80 (2007) (quoting State v. Diaz, 144 N.J. 628, 637 (1996)).  Our Court has adopted a flexible standard for merger issues that "requires [courts] to focus on 'the elements of crime and the Legislature's intent in creating them,' and on 'the specific facts of each case.'" Cole, 120 N.J. at 327 (quoting State v. Miller, 108 N.J. 112, 116-17 (1987)).  "Convictions for . . . offenses that merely offer an alternative basis for punishing the same criminal conduct will merge." State v. Brown, 138 N.J. 481, 561 (1994).

In Cole, the Court considered whether the defendant's conviction for aggravated assault merged with his conviction for aggravated sexual assault. 120 N.J. at 322.  In holding that it did not, the Court found that "in enacting [N.J.S.A. 2C:14-2(a)(3)], [the Legislature] intended the crime of aggravated

27

sexual assault to be separate and distinct from the underlying offenses." Id. at 332. Further, the "aggravated sexual assault statute, with its focus on penetration, seeks to protect the victim from an act of sexual defilement," contrasting with the aggravated assault statute, which "seeks to protect the victim from the most serious form of bodily injury." Ibid. The Court thus held that "because the Legislature, in creating distinct offenses, intended to protect separate interests," merger of aggravated sexual assault and aggravated assault was inappropriate. Id. at 332-33.

Cole is directly on point with the circumstances present here. Because aggravated sexual assault and aggravated assault are separate and distinct offenses, the sentencing court's decision not to merge the offenses was consistent with established case law.

E. Self-Represented Arguments

Defendant raises six additional points of contention in his self-represented brief.

In Points VI and VII, defendant contends the State violated Brady v. Maryland, 373 U.S. 83 (1963). Under Point VI, defendant asserts the State failed to turn over three photographs depicting internal views of I.G.'s vagina. The sexual assault nurse examiner (SANE) testified regarding her forensic

evaluation of I.G., stating she took photographs following the incident, and referring to photographs of observed injuries, asserting that I.G. "had a small abrasion . . . on her posterior fourchette, the entrance to her vagina."  Defense counsel requested a side bar conference and advised the court she had received twelve external photographs but no internal photos.  The State responded that they believed they turned over all the photographs to prior defense counsel as discovery was marked complete at the time of the pre-trial conference.  The State informed the court it did not intend to introduce the internal photographs at trial.

The court then conducted a N.J.R.E. 104 hearing regarding the photographs.  After questioning the SANE nurse, defense counsel informed the court she no longer desired to exclude the photos nor to provide a limiting instruction to the jury and requested to simply continue her cross-examination of the SANE nurse before the jury.  There was no further reference by any party to the internal pictures.

As there was no objection we review for plain error, Rule 2:10-2, and find there was none.  As our Supreme Court has stated:

> Three essential elements must be considered to determine whether a Brady violation has occurred:  (1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the

State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case.

[State v. Brown, 236 N.J. 497, 518 (2019).]

Defendant has not demonstrated there was a Brady violation. First, the internal pictures are arguably adverse to defendant. The SANE nurse testified the photos depicted an abrasion on I.G.'s vaginal area. At worst, this shows that defendant injured I.G. during the sexual incident. At best, it merely demonstrates that defendant had sex with I.G., which defendant already admits.

Second, defendant has not established the State failed to produce the photographs. The prosecution believed that discovery was marked as complete and that the pictures were turned over to defendant's prior counsel. In any event, it made every effort to ensure that defendant was afforded an opportunity to review the pictures, participated in a Rule 104 hearing and did not introduce the pictures into evidence.

Lastly, the pictures do not inform the central question of whether defendant reasonably believed I.G. consented to having vaginal intercourse, effectively making them immaterial to defendant's case. Brown, 236 N.J. at 520. ("[E]vidence is material if there is a 'reasonable probability' that timely production of the withheld evidence would have led to a different result at trial.")

(quoting U.S. v. Bagley, 473 U.S. 667, 682 (1985)).  Defendant's Brady claim is meritless.

We need only comment briefly on Point VII.  Defense counsel raised an additional objection during the SANE nurse's testimony at trial, after the SANE nurse stated she erroneously checked off the "anal penetration" box on her report.  The court advised defense counsel that the State and the court were aware of the mistake, and it had been discussed "numerous times" with defendant's prior counsel.  The mistake was identified more than three years before trial in the briefing pertaining to a detention hearing.  There was no Brady violation.

Under Point VIII, defendant contends the trial court erred in admitting two phone calls recorded by I.G as he did not consent to the recording.  Defense counsel did not object.

Defendant has not demonstrated plain error as the argument lacks merit.  Under N.J.S.A. 2A:156A-4(d), a conversation may be recorded when one party to the conversation consents.  Hornberger v. Am. Broad. Cos., 351 N.J. Super. 577, 627 (App. Div. 2002).  Because I.G. was in New Jersey at the time of the call, she was permitted to record the conversation under the statute.  See State v. Worthy, 141 N.J. 368, 379 (1995) ("[T]he application of the Wiretap Control

Act in . . . circumstances [where the interception of telephone conversations originate from an out-of-state telephone] does not constitute an impermissible or extra-territorial extension of the statute because the telephone calls . . . involved conversations with a person in New Jersey.").

We find insufficient merit in defendant's remaining arguments in his self-represented brief to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

The convictions are affirmed. We vacate the sentence for the reasons expressed and remand to the court for a new sentencing hearing without consideration of aggravating factor two.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-2428-23